1   BOBBY GHAJAR (SBN 198719)
    Bobby.ghajar@pillsburylaw.com
2   MARK LITVACK (SBN 183652)
    Mark.litvack@pillsburylaw.com
3   MARCUS D. PETERSON (SBN 265339)
    Marcus.peterson@pillsburylaw.com
4   PILLSBURY WINTHROP SHAW PITTMAN LLP
    725 South Figueroa Street, Suite 2800
5   Los Angeles, CA  90017-5406
    Telephone: (213) 488-7100
6   Facsimile: (213) 629-1033
    Attorneys for Defendants, Counter-Claimants and
7   Third-Party Plaintiffs

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          WESTERN DIVISION

11
    BLK BRANDS LLC., a New Jersey          )   No.  2:11-cv-06378-GW -SS
12  Limited Liability Corporation;         )
                                           )
13            Plaintiff,                    )   **ANSWER AND COUNTER-**
                                           )   **CLAIM AND THIRD PARTY**
14        vs.                               )   **COMPLAINT FOR**
                                           )   **TRADEMARK**
15  BLACKWATER INNOVATIONS               )   **INFRINGEMENT; FALSE**
    CORP, a Canadian Corporation ,         )   **DESIGNATION OF ORIGIN;**
16  IVAN SOLOMON, an individual, and      )   **UNFAIR COMPETITION;**
    GORDON JUNG, an individual.            )   **BREACH OF WRITTEN AND**
17                                          )   **ORAL AGREEMENTS;**
              Defendants, Counter-          )   **BREACH OF FIDUCIARY**
18  Claimants and Third-Party Plaintiffs    )   **DUTY; BREACH OF**
                                           )   **CONFIDENCE;**
19        vs.                               )   **MISAPPROPRIATION OF**
                                           )   **TRADE SECRETS; TORTIOUS**
20  BLK BRANDS, LLC, a New York           )   **INTERFERENCE WITH**
    Limited Liability Company;             )   **CONTRACTS**
21  JACQUELINE WILKIE, an                 )
    Individual; LOUISE WILKIE, an          )
22  Individual; CE ORGANICS, a            )   **JURY TRIAL DEMANDED**
    Canadian Company of unknown           )
23  structure; ECLIPSE CONCEPTS,          )
    INC., a Canadian Corporation; CHRIS   )
24  MANZO, an Individual; ALBIE           )
    MANZO, an Individual; CHRIS           )
25  LAURITA, an Individual.                )
                                           )
26            Counter-Claim and Third      )
    Party Defendants.                      )
27                                          )

28

ANSWER AND COUNTER-CLAIM AND
THIRD PARTY COMPLAINT                    - 1 -              Case No.2:11-cv-06378-GW -SS

1

## **INTRODUCTION**

2

Defendants are the true creators of the concept and idea of

3

BLACKWATER.  Plaintiff and its owners (the Third Party Defendants) have

4

stolen the ideas, concepts, and property of the Defendants.  Plaintiff's portrayal

5

of this case as a trademark dispute involving the likelihood of confusion

6

distorts and misstates the reality of the facts.  While Defendants do not dispute

7

that two companies using the BLACKWATER trademark for similar products

8

is likely to cause confusion, the true facts are that it is the Defendants who

9

rightfully own the idea, this name and this mark.  Contrary to the fiction

10

proposed by the Plaintiff, the true facts prove deception by the Plaintiff and its

11

principals (who are rightfully brought into this dispute by the Third Party

12

Complaint) in their attempt to steal the very idea of BLACKWATER and

13

other property of the Defendants.  Plaintiff and its principals have repeatedly

14

committed fraud and deception, and breached confidences and their written

15

and oral agreements, in their attempt to wrongfully confiscate the very concept

16

and the name of BLACKWATER.  The facts prove that the truly injured

17

parties in this litigation are the Defendants, whose creation and work have

18

been wrongfully taken from them, and who answer this Complaint and file this

19

Counter-claim and Third Party Complaint to seek redress to the wrongs done

20

to them.

21

## **ANSWER**

22

1.      Defendants admit the allegations contained within Paragraph 1 of

23

the Complaint.

24

2.      Defendants admit the allegations contained within Paragraph 2 of

25

the Complaint as to Defendant Blackwater Innovations Corp. ("Blackwater").

26

Defendants deny the allegations of Paragraph 2 of the Complaint as to all

27

other defendants.

28

3.     Defendants admit the allegations contained within Paragraph 3 of the Complaint as to Defendant Blackwater.  Defendants deny the allegations contained within Paragraph 3 of the Complaint as to all other Defendants.

4.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 4 of the Complaint and thus deny said allegations.

5.     Defendants admit the allegation contained with Paragraph 5 of the Complaint.

6.     Defendants admit that Ivan Solomon is an individual and owner of Blackwater.  Defendants deny any and all other allegations contained within Paragraph 6 of the Complaint.

7.     Defendants admit that Gordon Jung is an individual and owner of Blackwater.  Defendants deny any and all other allegations contained within Paragraph 6 of the Complaint.

8.     Defendants admit that Louise Wilkie and Jacqueline Wilkie (hereinafter the "Wilkie Sisters") owned a Canadian company named CE Organics that worked in the manufacturing of syrups for coffees.  Defendants deny any and all other allegations contained within Paragraph 8 of the Complaint.

9.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding the Wilkie Sisters' mother contained within Paragraph 9.  Defendants deny any and all other allegations contained within Paragraph 9 of the Complaint.

10.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding the Wilkie Sisters' mother contained within Paragraph 10.  Defendants deny any and all other allegations contained within Paragraph 10 of the Complaint.

11.    Defendants admit that Jacqueline Wilkie applied to register the BLACKWATER trademark with the United States Patent and Trademark office. Defendants deny any and all other allegations contained within Paragraph 11 of the Complaint.

12.    Defendants admit that BLACKWATER was registered on June 28, 2011 under Reg. No. 3,986,573 and said registration was purportedly subsequently assigned to BLK Brands, LLC. Defendants deny any and all other allegations contained within Paragraph 12 of the Complaint.

13.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 13 of the Complaint and thus deny said allegations.

14.    The Defendants admit that Gordon Jung met with the Wilkie Sisters in Seattle in September of 2009. Defendants deny any and all other allegations contained within Paragraph 14 of the Complaint.

15.    The Defendants admit that the September 2009 meeting between Gordon Jung and the Wilkie Sisters led to a series of meeting and a plan wherein Defendants Jung and Solomon would be non-equal partners and joint owners in an entity with the Wilkie Sisters to manufacturer and sell BLACKWATER – a water based drink containing fulvic acid. Defendants further admit that Exhibit A is a non-executed copy of an agreement between the Wilkies and Jung and Solomon which was eventually executed by all of them. Defendants deny any and all other allegations contained within Paragraph 15 of the Complaint.

16.    The Defendants deny the allegations contained within Paragraph 16 of the Complaint.

17.    The Defendants admit the allegations contained within Paragraph 17 of the Complaint.

18.     Defendants admit that the common use of the BLACKWATER mark is likely to cause confusion regarding the source, sponsorship, or origin of the goods at question. Defendants deny any and all other allegations contained within Paragraph 18 of the Complaint.

19.     The Defendants deny the allegations contained within Paragraph 19 of the Complaint.

20.     Defendants admit that the common use of the BLACKWATER mark is likely to cause confusion regarding source, sponsorship, or origin of the goods at question. Defendants deny any and all other allegations contained within Paragraph 20 of the Complaint.

21.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 21 of the Complaint and thus deny said allegations.

22.     The Defendants deny the allegations contained within Paragraph 22 of the Complaint.

23.     The Defendants deny the allegations contained within Paragraph 23 of the Complaint.

24.     The Defendants deny the allegations contained within Paragraph 24 of the Complaint.

25.     The Defendants deny the allegations contained within Paragraph 25 of the Complaint.

26.     The Defendants deny the allegations contained within Paragraph 26 of the Complaint.

27.     No response is necessary to Paragraph 27 of the Complaint.

28.     The Defendants deny the allegations contained within Paragraph 28 of the Complaint.

29.     Defendants admit that the common use of the BLACKWATER mark is likely to cause confusion regarding the source, sponsorship, or origin

of the goods at question.  Defendants deny any and all other allegations contained within Paragraph 29 of the Complaint.

30.	The Defendants deny the allegations contained within Paragraph 30 of the Complaint.

31.	The Defendants deny the allegations contained within Paragraph 31 of the Complaint.

32.	The Defendants deny the allegations contained within Paragraph 32 of the Complaint.

33.	The Defendants deny the allegations contained within Paragraph 33 of the Complaint.

34.	The Defendants deny the allegations contained within Paragraph 34 of the Complaint.

35.	No response is necessary to Paragraph 35 of the Complaint.

36.	The Defendants deny the allegations contained within Paragraph 36 of the Complaint.

37.	Defendants admit that the common use of the BLACKWATER mark is likely to cause confusion regarding source or origin of the goods at question. Defendants deny any and all other allegations contained within Paragraph 37 of the Complaint.

38.	The Defendants deny the allegations contained within Paragraph 38 of the Complaint.

39.	The Defendants deny the allegations contained within Paragraph 39 of the Complaint.

40.	The Defendants deny the allegations contained within Paragraph 40 of the Complaint.

41.	The Defendants deny the allegations contained within Paragraph 41 of the Complaint.

42.     The Defendants deny the allegations contained within Paragraph 42 of the Complaint.

43.     The Defendants deny the allegations contained within Paragraph 43 of the Complaint.

44.     No response is necessary to Paragraph 44 of the Complaint.

45.     Defendants admit that on July 18, 2011 Defendant Blackwater applied for registration of the BLACKWATER mark with the United States Patent and Trademark Office.  Defendants deny any and all other allegations contained within Paragraph 45 of the Complaint.

46.     Defendants admit that they petitioned to cancel Plaintiff's wrongfully acquired BLACKWATER trademark.  Defendants admit that Plaintiff is infringing Defendants' rights to the marks.  Defendants deny any and all other allegations contained within Paragraph 46 of the Complaint.

47.     Defendants admit the allegations contained within Paragraph 47 of the Complaint.

48.     Defendants admit the allegations contained within Paragraph 48 of the Complaint.

49.     Defendants deny the allegations contained within Paragraph 49 of the Complaint.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by fraud.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by its failure to mitigate its damages.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT
## THE PARTIES

1.      Defendant/Counter-claimant/Third-party Claimant Blackwater Innovations Corp. ("Blackwater") is a limited liability company organized and existing under the laws of British Columbia, Canada, having its headquarters and principal place of business at 300-1062 Homer St., Vancouver, B.C., Canada 6B 2W9.  Blackwater is the rightful co-owner of the BLACKWATER trademark.

2.      Defendant/Counter-claimant/Third-party Claimant Ivan Solomon is an individual residing in Canada.

3.      Defendant/Counter-claimant/Third-party Claimant Gordon Jung is an individual residing in Canada (collectively referred to herein with Counter-Claimants Blackwater and Ivan Solomon as "Counter-Claimants").

4.      Upon information and belief, Plaintiff/Counter-defendant BLK Brands LLC ("BLK") is a limited liability company organized and existing under the laws of the state of New York and having its headquarters and principal place of business at 214 West 39th Street, Suite 202, New York, NY 10018.

5.      Upon information and belief, Third-party defendant Jacqueline Wilkie is an individual who is a citizen, and domiciliary, of Vancouver, British Columbia, Canada.  Ms. Wilkie was a former business partner of Solomon and Jung and for a period of time, and acted and represented herself as a Vice President of Blackwater.  Ms. Wilkie claims to be a partner in BLK. Ms. Wilkie is one of the conscious, dominant and active forces behind the

wrongful acts of BLK complained of herein, which wrongful acts she has engaged in for the gain and benefit of BLK and for her own individual gain and benefit.

6.   Upon information and belief, Third-party defendant Louise Wilkie is an individual who is a citizen, and domiciliary, of Vancouver, British Columbia, Canada.  Ms. Wilkie was a former business partner of Solomon and Jung and a Vice President of Blackwater.  Ms. Wilkie claims to be a partner in BLK.  Ms. Wilkie is one of the conscious, dominant and active forces behind the wrongful acts of BLK complained of herein, which wrongful acts she has engaged in for the gain and benefit of BLK and for her own individual gain and benefit.

7.   Upon information and belief, Third-party defendant CE Organics Ltd. ("CEO") is or was a company organized and existing under the laws of British Columbia, Canada, with a principal place of business of 101-5498 267th St., Aldergrove, B.C. V4W 1P7, Canada. CEO is co-owned by Jacqueline and Louise Wilkie.

8.   Upon information and belief, Third-party defendant Eclipse Concepts, Inc. ("Eclipse") is or was a company organized and existing under the laws of British Columbia, Canada, with a principal place of business of 15573 Goggs Ave., White Rock, B.C., V4B 2N5, Canada.  Eclipse is co-owned by Jacqueline and Louise Wilkie.

9.   Upon information and belief, Third-party defendant Chris Manzo is an individual who is a citizen, and domiciliary, of New Jersey.  Mr. Manzo is a partner of BLK and his public and television appearances on behalf of BLK have garnered public attention to BLK and its product. *See*, for example, http://foodspring.com/content/blackwater/ (last visited November 17, 2011). Mr. Manzo is one of the conscious, dominant and active forces behind the wrongful acts of BLK complained of herein, which wrongful acts he has

1  engaged in for the gain and benefit of BLK and for his own individual gain
2  and benefit.

3       10.    Upon information and belief, Third-party defendant Albie Manzo
4  is an individual who is a citizen, and domiciliary, of New Jersey.  Mr. Manzo
5  is a partner of BLK and his public and television appearances on behalf of
6  BLK have garnered public attention to BLK and its product.  *See*, for example,
7  http://foodspring.com/content/blackwater/ (last visited November 17, 2011).
8  Mr. Manzo is one of the conscious, dominant and active forces behind the
9  wrongful acts of BLK complained of herein, which wrongful acts he has
10  engaged in for the gain and benefit of BLK and for his own individual gain
11  and benefit.

12       11.    Upon information and belief, Third-party defendant Chris Laurita
13  is an individual who is a citizen, and domiciliary, of New Jersey. Mr. Laurita
14  is a partner of BLK and his public and television appearances on behalf of
15  BLK have garnered public attention to BLK and its product.  *See*, for example,
16  http://montville.patch.com/articles/real-housewives-continues-to-be-
17  heartbreaking (last visited November 17, 2011).  Mr. Laurita is one of the
18  conscious, dominant and active forces behind the wrongful acts of BLK
19  complained of herein, which wrongful acts he has engaged in for the gain and
20  benefit of BLK and for his own individual gain and benefit.

21  **JURISDICTION AND VENUE**

22       12.    Jurisdiction of all trademark claims is proper under 15 U.S.C. §
23  1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338  as the claims arise under the
24  laws of the United States, including violations of the Lanham Act, as
25  amended, 15 U.S.C. §§ 1041 *et seq.*

26       13.    Jurisdiction of all other claims is proper under 28 U.S.C.
27  § 1332(a) (2) as the matter is between citizens of different States (New York
28  and New Jersey) and subjects of a foreign state and because the amount in

controversy, exclusive of interest and costs, exceeds $75,000.  Jurisdiction is also proper under 28 U.S.C. §1367 as the claims are so related as to form the same case or controversy.

14.    Venue is proper in this district as several of the events giving rise to this action occurred in this district and because the counter-claims and third-party claims arise out of the same transactions and occurrences as the events giving rise to this action.  The Court has personal jurisdiction over the Third party defendants because each transacted business in this District through the marketing and sale of the infringing product and via attendance at trade shows.

## FACTUAL BACKGROUND

### Creation of the BLACKWATER Concept

15.    In July 2009, Counter-Claimants were introduced to fulvic and humic acid, a nutritional supplement derived from 80-million-year old organic matter.

16.    Fulvic acid has been recognized as having numerous health benefits including that it:

- Will alkaline the blood faster than any other natural health product on earth.
- Has over 77 Macro and Trace Minerals, naturally occurring in their ionic (nano) form for ultimate absorption.
- Works with Humic Acid to remove unwanted salt acids that surround & harden cell walls, creating cell permeability.
- Is the electrolyte that enables our cells to absorb nutrients and is a multi-directional antioxidant.
- Detoxifies the body by eliminating heavy metals and toxins and is considered the most powerful form of Oral Chelation.
- Allows other Super-Foods, Vitamins, and Herbs to be absorbed and effectively utilized by the body.

- Provides increased energy, mental clarity, and sense of well being by feeding and nourishing every cell in the body.

17.     At a meeting during which they were introduced to fulvic and humic acids (though at the time it was referred to only as "fulvic acid"), Counter-Claimants became aware that adding fulvic and humic acids to water darkened it temporarily until the minerals settled to the bottom of the glass. Counter-Claimants immediately saw a unique opportunity for such a product – while suppliers sold fulvic acid online, no one was selling water blended with fulvic and humic acids.  Later that summer, Counter-Claimants began to test and evaluate different formulations, proper base water and satisfactory bacterial levels, in which water mixed with fulvic and humic acids would create a unique beverage that was permanently black in color.

18.     Counter-Claimants immediately began creating a logo and look for the new product and created a logo and concept that later formed the basis of the BLACKWATER sales and marketing (see insert below).  Solomon and Jung agreed that they would equally fund and share in the product and that all rights would belong to Solomon's company Creative Thinkers, Inc. ("CTI") until a time when it was appropriate for Blackwater to become its own company.



19.     Counter-Claimants understood that they needed to find a bottler to assist in the bottling and distribution of BLACKWATER.

**Blackwater's Founders Involve the Wilkie Sisters in the BLACKWATER Project**

20.     In September 2009 Counter-Claimants attended the Seattle Coffee Fest Trade Show, in Seattle, Washington, and met the Wilkie Sisters, who were attending the same trade show on behalf of their company CEO. The Wilkie Sisters remembered Jung from his previous role with Overwaitea Food Group, a supermarket chain in Canada.  Based upon Jung's knowledge of the Wilkie Sisters' business, he shared, in confidence, the BLACKWATER concept and the fact that he was looking for a bottler.

21.     The Wilkie Sisters stated they had never heard of fulvic acid and were immediately interested in the product.  They stated that they could bottle a run of the BLACKWATER beverage.  Separately, the Wilkie Sisters expressed interest in Jung's Overwaitea contacts in connection with CEO's coffee syrup products.  Jung and the Wilkie Sisters agreed to meet at a later date.

22.     In early October 2009, Counter-Claimants met the Wilkie Sisters at the CEO facility in Langley, B.C., Canada.  Counter-Claimants confidentially explained the benefits of fulvic acid and showed the graphics Solomon had created for the BLACKWATER beverage.  The Wilkie Sisters stated that they could bottle a sample run of the BLACKWATER beverage in exchange for Counter-Claimants designing a new label for CEO syrups and introducing CEO to their Overwaitea contacts.

23.     About a week later, Counter-Claimants again met with the Wilkie Sisters at the CEO facility.  The Wilkie Sisters had bottle samples and Counter-Claimants selected a bullet-shaped, 500 ML glass bottle.  The Wilkie

1   Sisters had also contacted a label supplier and discussed costs of producing a
2   run of the BLACKWATER beverage.

3        24.    On October 27, 2009, Counter-Claimants set up a website at
4   www.blackwaterdrink.com.

5        25.    In early November 2009, Counter-Claimants again met with the
6   Wilkie Sisters.  The Wilkie Sisters stated that they had a connection with
7   Starbucks in Seattle and could get the BLACKWATER beverage into
8   Starbucks and other distributors around Seattle.  They also stated they could
9   get the product sold through Amazon.com.  During the meeting, to confirm the
10  fact that their conversations were all confidential, Counter-Claimants insisted
11  that the Wilkie Sisters sign a non-disclosure agreement related to "Blackwater
12  Drink Products" to ensure that no confidential information related to the
13  concept, formula, or marketing and sales plans were disseminated by the
14  Wilkie Sisters.

15       26.    The Wilkie Sisters executed this non-disclosure agreement on
16  behalf of themselves and CEO.

17       27.    At the end of 2009, Louise Wilkie sent to Counter-Claimants a
18  document entitled "MOU Discussion Points" in which the Wilkie Sisters
19  suggested a 4-way split of a joint venture to market and sell BLACKWATER,
20  CEO syrups, and products called Nature at Work.  This proposal was never
21  accepted by Counter-Claimants.

22       28.    Early the next year, Counter-Claimants and the Wilkie Sisters
23  met to discuss the structure of the company and plans for marketing
24  BLACKWATER products and CEO syrups.  The Wilkie Sisters pushed for the
25  4-way split of BLACKWATER as discussed in the MOU.  Again Counter-
26  Claimants refused this demand.

27

28

## The Wilkie Sisters Plot to Extort a Greater Percentage of
## BLACKWATER

29.     In or around January 2010, Counter-Claimants contacted an attorney about filing trademark applications in the United States and Canada, which was estimated to cost about $2000.   Counter-Claimants shared this information with the Wilkie sisters.  Jacqueline Wilkie stated that she had prior experience applying for trademarks online, and that she could apply for BLACKWATER online herself and it would be significantly less than $2000. She offered to do so for Counter-Claimants.

30.     Counter-Claimants agreed to allow Jacqueline Wilkie to register BLACKWATER in CTI's name and Ms. Wilkie agreed to do so.

31.     Shortly thereafter, Counter-Claimants became aware of the fact that Jacqueline Wilkie had deceived and misled them and that in fact the BLACKWATER DRINK had been applied for in Canada by Jacqueline Wilkie on December 11, 2009, over a month prior to a trademark discussion among the parties (but after Wilkie had signed the non-disclosure agreement). Counter-Claimants later learned that Jacqueline Wilkie had also filed an application for BLACKWATER in the United States on January 13, 2010. Jacqueline Wilkie did not disclose these trademark applications to Counter-Claimants.

32.     When Counter-Claimants raised this issue with Jacqueline Wilkie, she "claimed" that she had registered the BLACKWATER mark to protect the group.  Counter-Claimants demanded that Jacqueline Wilkie immediately re-assign the trademark filings to CTI, as Ms. Wilkie had no rights to a registration for BLACKWATER, and CTI was the rights holder. Jacqueline Wilkie agreed to transfer the rights.

33.     In early February, Jung took a trademark assignment form to a meeting with Louise Wilkie.  Louise Wilkie took the form, but Jacqueline

ANSWER AND COUNTER-CLAIM AND
THIRD PARTY COMPLAINT                              - 15 -                    Case No.2:11-cv-06378-GW -SS

Wilkie did not sign in. Instead, she stated that she would not sign it unless the trademark was assigned to a company in which she was given an ownership stake. The Wilkie Sisters pushed for a 25% ownership each in the new company.

34.  On information and belief, the Wilkie Sisters had their own lawyer re-draft the trademark assignment form to state that Ms. Wilkie was under no obligation to transfer the Canadian registration until the Wilkie sisters were given shares in a new company. While the assignment form presented by Counter-Claimants would have included Ms. Wilkie's trademark applications world-wide, the Wilkie Sisters ensured that the assignment form they signed only covered Canada. Counter-claimants were unaware of this modification at the time they signed the trademark assignment.

35.  In February 2010, the Wilkie Sisters were told that if they did not want to be a part of the new venture at 10% each, they could go back to being the exclusive bottlers of the BLACKWATER beverage.

36.  Counter-Claimants agreed to create a new company, the name of which was to be decided later, which would own the rights to BLACKWATER. Each of the Wilkie Sisters would get 10% of the company and Solomon and Jung would each have 40%. The Wilkie sisters agreed and further agreed that they would continue to work to market and sell the BLACKWATER products on behalf of Blackwater. Each was made a Vice President of what was then called Blackwater Drink Co.

37.  Jacqueline Wilkie did not assign the Canadian registration to Blackwater until July 2010 and never assigned the US application.

38.  At no point did either Wilkie Sister suggest that the Wilkie Sisters had originally created the BLACKWATER concept, introduced the others to fulvic acid, or provided any intellectual property in the form of trademarks or graphic creation.

**As BLACKWATER Grows, the Wilkie Sisters Continue to Plot for a Greater Share, and to Steal BLACKWATER Completely**

39.    In mid-February 2010, Louise Wilkie contacted Counter-Claimants and again pushed for a four-way partnership, wrongfully exploiting the trademark application that Jacqueline Wilkie had filed in her own name.

40.    By April 2010, Solomon had refined the design of the labels used on bottles of BLACKWATER.  It appeared as below:



41.    In early spring, 2010, Ms. Wilkie forwarded to Solomon and Jung a 6-month business plan prepared by National Sales Group ("NSG").  The next day, she forwarded an email sent to her by Tim Gregory of NSG and listed the benefits of working with NSG, including that "He knows the shows to be in and can let it out to his network of distributors as we allow."

42.    On May 3, 2010, a limited liability company (0880079 BC Limited, later changed to Blackwater Innovations Corp.) was formed. Solomon and Jung each owned 40% of the company and the Wilkie Sisters each owned 10%, though the Wilkie Sisters never took possession of their shares of the company.

43.     Shortly thereafter, Mr. Gregory and other representatives of NSG visited Blackwater in Vancouver, at Counter-Claimants' expense.  NSG stated that with their network of distributors and brokers in the United States, they could get BLACKWATER to $5 million in sales in the first year.  Blackwater signed an agreement with NSG to pay $6000 a month for NSG's services – also paid for by Counter-Claimants.

44.     Counter-Claimants continued to seek out product placement opportunities.  Jacqueline Wilkie forwarded to Counter-Claimants an email with product placement suggestions, including logo placement in films and television shows, and a co-branding agreement to become the preferred water of the Bellagio Resort in Las Vegas.  Ms. Wilkie acknowledged in an email with a third party that she would have to get approval of the "President of Blackwater."

45.     In June 2010, NSG confirmed that it had reserved a booth at the New York Fancy Foods Show at the end of the month.  NSG planned to display Counter-Claimants' BLACKWATER products along with other brands NSG represented.

## The Wilkie Sisters Meet the Manzo-Laurita Family and Attempt to Steal BLACKWATER

46.     Upon information and belief, from June 25-30, 2010, Counter-Claimants attended the New York Fancy Foods Show.  BLACKWATER was very well received at the show, attracting attention from Kroger, IGA, Super Value, Panera Bread, and other retailers and restaurants.  Counter-Claimants sent 80 cases worth of samples to companies across the country based on contacts made at the show.

47.     Upon information and belief, the Wilkie Sisters first met Chris Manzo, Albie Manzo, and/or Chris Laurita (collectively "Manzo-Laurita Family") at the New York Fancy Foods Show in 2010.  For example, in an

August 9, 2011 article for the Franklin Lakes Patch, Albie Manzo and Chris Laurita stated that they first discovered "black water [sic], as it was called" at the New York foods show the previous year. *See Manzo-Laurita Family Strikes Black Gold with Blk.* available at http://franklinlakes.patch.com/articles/manzo-laurita-family-strikes-black-gold-with-blk (last visited November 11, 2011).  Upon information and belief, it was then that the Wilkie Sisters and the Manzo-Laurita Family decided to cut Counter-Claimants out of the business and steal BLACKWATER for their own use.  The Manzo-Laurita family's actions predate the organization of BLK, which was on February 17, 2011 and were the actions of those individuals.

48.    After the New York Fancy Foods Show in June 2010, Counter-Claimants met with the Wilkie Sisters at CTI's offices.  The Wilkie Sisters again demanded more than 20% (total) of the company.  Alternatively, the Wilkie Sisters demanded that Solomon and Jung allow their investor, a man named "Bruno," to invest $250,000 in exchange for 20% of the company, or they would leave Blackwater.  Solomon and Jung had already accepted an investment from another investor and told the Wilkie Sisters that they would not accept Bruno as an investor.

49.    Jacqueline Wilkie transferred the Canadian BLACKWATER DRINK registration to Blackwater on July 13, 2011, but did not transfer the US application, despite having agreed to do so.

50.    In August, 2011, the Wilkie Sisters concluded their relationship with Blackwater, stating, that they wanted to "call it a day" and "move on."

51.    Upon information and belief, before the relationship with Blackwater had terminated, the Wilkie Sisters had created a new company, called Eclipse Concepts.  The Wilkie Sisters and Eclipse wrongfully promoted the BLACKWATER beverage **as Eclipse's own brand**.  They entered

BLACKWATER into the 2010 Water Innovations awards and Eclipse Concept gained notoriety as a finalist for Best New Functional Water and Best Newcomer. *See Packaged Water Industry Celebrates Success at Gleneagles,* available at http://www.foodbev.com/news/packaged-water-industry-celebrates-success-at-gleneagles (last visited November 11, 2011).  According to publicly available information, the Wilkie Sisters brazenly entered Blackwater's product with Blackwater's logo and bottle design:



Finalists

**Willow Water**, with its relaunched 100% natural spring water that has been proven to reduce wrinkles in a double-blind, placebo-controlled scientific study.

Canada's **Eclipse Concepts** with Blackwater – a literally black water, featuring the miracle molecule fulvic acid.

52.    Upon information and belief, in the meantime, the Wilkie Sisters and the Manzo-Laurita Family continued to build a company around the stolen BLACKWATER brand. *See Interview with BLK Beverages co-founder Albie Manzo,* available at http://www.foodbev.com/interview/interview-with-blk-beverages-co-founder (last visited November 11, 2011).  Using NSG, and a supply of fulvic acid from GTX (a company that was supposed to have a

1   proprietary relationship with Counter-Claimants), the group began to

2   distribute water under the BLACKWATER mark.

3       53.    On April 25, 2011, in furtherance of the U.S. trademark

4   application for the BLACKWATER mark that she had allegedly filed for CTI,

5   Jacqueline Wilkie filed a "Statement of Use."   In the Statement of Use, she

6   claimed a first use as of August 1, 2010.  To prove use, she submitted the

7   following exemplar of use, which was a direct knock-off of the bottle that

8   Blackwater had been using (see below).  Concurrently, she transferred the

9   application into the name of BLK.





*Specimen submitted by J. Wilkie*

*Blackwater bottle*

22      54.    On information and belief, Jacqueline Wilkie had not used

23  BLACKWATER in commerce in her own name as of August 1, 2010.  Also

24  on information and belief, neither Jacqueline Wilkie nor BLK have ever sold

25  any products using this bottle design.

26      55.    On July 18, 2011, Counter-Claimants sent a cease and desist

27  letter to BLK, claiming trademark infringement and that BLK's

BLACKWATER registration was subject to cancellation based on fraud on the USPTO.  BLK did not respond to the letter, but instead instituted this action.

56.     On August 29, 2011, BLK filed application serial number 85/409,637 to register "blk. BLACKWATER" with the U.S. Patent and Trademark Office, claiming a first use as of February 2010.  However, BLK had earlier claimed not to have used BLACKWATER until August 2010 and BLK was not even formed until February 2011.

## FIRST CAUSE OF ACTION

### (Conversion)

### Against All Counter-Defendants/Third-Party Defendants

57.     Counter-claimants incorporate by reference and re-allege allegations 1-56 above, as if set forth fully herein.

58.     Counter-claimants own rights in the BLACKWATER concept, in the name and logo, and in the proprietary process for making and bottling BLACKWATER.

59.     Counter-Defendants/Third-Party Defendants have stolen and converted Blackwater's rights through the acts as described above.

60.     This conversion has damaged, and continues to damage, Blackwater.  The Counter-Defendants/Third-Party Defendants wrongfully sell a competing product to prospective purchasers of BLACKWATER.  Blackwater has lost, and continues to lose, sales and business opportunities as a result of the conversion.

## SECOND CAUSE OF ACTION

### (Breach of Non-Disclosure Agreement)

### Against CE Organics, Jacqueline Wilkie and Louise Wilkie

61.     Counter-Claimants incorporate by reference and re-allege allegations 1-60 above, as if set forth fully herein.

62.     On November 1, 2009, CTI and Counter-Claimants prepared a non-disclosure agreement to protect against the disclosure of any confidential or proprietary information related to BLACKWATER.  This included the concept behind BLACKWATER, the concept of selling fulvic acid infused water to the public, marketing and sales plans, and the method of creating a unique beverage containing suspended fulvic and humic acids that was permanently black in color.

63.     Counter-Claimants were the intended beneficiaries of this agreement.

64.     CEO and the Wilkie Sisters knew that Counter-Claimants were the intended beneficiaries of this agreement.

65.     The Wilkie Sisters willingly and knowingly signed and entered into the agreement on behalf of CEO, to be bound to its terms in exchange for a right to assist in the bottling and sale of BLACKWATER.

66.     CEO breached this agreement when the Wilkie Sisters stole the BLACKWATER name, stole the company's marketing and distribution plans, and attempted to steal the proprietary fulvic acid formula for their own commercial gain.  The Wilkie Sisters attempted to profit financially through the breach of the agreement and creation of a competing product.

67.     The breach of the non-disclosure agreement has damaged, and continues to damage Counter-Claimants.  The Wilkie Sisters, themselves and through Eclipse, and BLK have sold and/or are selling a competing product using Blackwater's proprietary information.  Counter-claimants have lost, and continue to lose, sales and business opportunities as a result of the breach of the non-disclosure agreement.

## THIRD CAUSE OF ACTION

### (Breach of Contract to Re-Assign the U.S. Application for BLACKWATER)

### Against Jacqueline Wilkie

68.    Counter-Claimants incorporate by reference and re-allege allegations 1-67 above, as if set forth fully herein.

69.    Jacqueline Wilkie filed application Ser. No. 77/910,623 ("the '623 Application") for BLACKWATER in connection with "drinking water" with the USPTO in her own name on January 13, 2011.  Jacqueline Wilkie improperly filed the '623 Application in her own name, instead of in the name of CTI, as agreed.

70.    When Counter-Claimants discovered this, they demanded Ms. Wilkie re-assign the application to CTI, for the benefit of Counter-Claimants, along with a Canadian trademark application for BLACKWATER DRINK. Ms. Wilkie agreed to re-assign both.

71.    Ms. Wilkie breached this agreement and never re-assigned the '623 Application to CTI or Counter-Claimants.

72.    Counter-Claimants, as the intended beneficiaries of the agreement, have been damaged through the breach of the agreement.  Counter-Claimants have lost sales and business opportunities because of Ms. Wilkie's and BLK's registration and misappropriation of the BLACKWATER mark.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### Against Jacqueline Wilkie and Louise Wilkie

73.    Counter-Claimants incorporate by reference and re-allege allegations 1-72 above, as if set forth fully herein.

74.   Jacqueline Wilkie and Louise Wilkie were partners with Counter-Claimants for the development, marketing, and sales of BLACKWATER products.

75.   As such, a fiduciary relationship existed between the Wilkie Sisters, and Counter-Claimants.

76.   The Wilkie Sisters breached their fiduciary duty in at least two ways.  First, they did not act in the best interest of the company.  They continuously attempted to extract greater control of the company from Counter-Claimants and refused to transfer the trademark to the company.  They also made an agreement with GTX for a proprietary fulvic acid blend in the name of CEO.

77.   Second, the Wilkie Sisters took corporate opportunities for themselves and their new business partners.  The Wilkie Sisters used contacts and potential sales opportunities, as well as the services of NSG into their new venture.  Those corporate opportunities should have belonged to Counter-Claimants and the Wilkie Sisters usurped them for their own personal gain.  Moreover, they used Counter-Claimants' BLACKWATER product and entered it into a competition under the name of their own company, Eclipse, which later garnered Eclipse publicity and accolades for a product that belonged to Counter-Claimants.

78.   Counter-Claimants have been damaged through the breach of fiduciary duty.  Counter-Claimants have lost sales, promotional, and business opportunities because of the Wilkie Sisters' and BLK's use of the business opportunities and transactions that were rightfully Counter-Claimants'.

## FIFTH CAUSE OF ACTION

### (Breach of Confidence)

### Against Jacqueline Wilkie, Louise Wilkie, and CEO

79.     Counter-Claimants incorporate by reference and re-allege allegations 1-78 above, as if set forth fully herein.

80.     On account of the Wilkie Sisters' positions as Vice Presidents and part owners of Blackwater, they received confidential information.  That information included the concept behind BLACKWATER, marketing and sales plans, and the method of creating a unique beverage containing suspended fulvic and humic acids that was permanently black in color.

81.     The Wilkie Sisters knew that the information was confidential.

82.     The Wilkie Sisters breached this confidence when they stole the BLACKWATER name, stole the company's marketing and distribution plans, and attempted to steal the proprietary fulvic and humic acid formula for their own commercial gain.  The Wilkie Sisters attempted to profit financially through the breach of confidence and creation of a competing product.

83.     The breach of confidence has damaged, and continues to damage Counter-Claimants.  The Wilkie Sisters and BLK sell a competing product using Counter-Claimants' confidential information.  Counter-Claimants have lost, and continue to lose, sales and business opportunities as a result of the breach of the confidence.

## SIXTH CAUSE OF ACTION

### (Trademark Infringement under 15 U.S.C. §1125)

### Against All Counter-Defendants/Third-Party Defendants

84.     Counter-Claimants incorporate by reference and re-allege allegations 1-83 above, as if set forth fully herein.

85.     Counter-Claimants, along with CTI, own a valid, protectable right in the BLACKWATER mark because they are the proper owner of the

trademark application for BLACKWATER and used the mark in commerce, in connection with beverage products, before any other entity.

86.    To the extent Jacqueline Wilkie or Louise Wilkie used the mark in commerce prior to leaving Counter-Claimants, it was as an agent of Counter-Claimants and under license from CTI and/or Counter-Claimants. After leaving Counter-Claimants, any use by the Wilkie Sisters, CEO or Eclipse was a trademark infringement, a breach of contract, a breach of fiduciary duty, and a breach of confidence.

87.    Any use by BLK or the Manzo-Laurita Family post-dates use by CTI and Counter-Claimants, and their licensees.  BLK cannot rely on the date of its intent to use application as that application should have been transferred to CTI and the application matured into a registration based on fraud on the USPTO.

88.    Counter-Defendants/Third-Party Defendants are using the BLACKWATER mark in connection with the offering of their goods and services without CTI's or Counter-Claimants' consent, and with knowledge of CTI's and Counter-Claimants' rights.

89.    Counter-Defendants/Third-Party Defendants' unauthorized use of the BLACKWATER mark indicates to consumers that Counter-Defendants/Third-Party Defendants' goods are in some manner connected with, sponsored by, affiliated with, or related to CTI or Counter-Claimants, their licensees, or their goods and services.

90.    Counter-Defendant/Third-Party Defendants' unauthorized use of the BLACKWATER mark is also likely to cause consumers to be confused as to source, nature and quality of the goods Counter-Defendants/Third-Party Defendants are promoting or selling.

91.    BLK admits likelihood of confusion between the parties' BLACKWATER products, as it states in its Complaint, ¶20, "Defendant's

1  activities are likely to lead to and result in confusion, mistake or deception,

2  and are likely to cause the public to believe that Plaintiff has produced,

3  sponsored, authorized, licensed or is otherwise connected or affiliated with

4  Defendants' commercial and business activities, all to the detriment of

5  Plaintiff."

6       92.    Indeed, the Counter-Defendant/Third-Party Defendants claim use

7  of the exact same BLACKWATER mark on the same or very similar product.

8  They sell in the exact same retail channels of high-end retailers, restaurants,

9  and on the internet.  Because of the media attention drawn by the Manzo-

10  Laurita Family, Counter-Defendant/Third Party Defendants are likely to

11  overwhelm and saturate the marketplace and falsely suggest that BLK, the

12  Wilkie Sisters, and the Manzo-Laurita Family is responsible for the

13  BLACKWATER idea, creation, and name, when such is not the case.

14  Counter-Claimants and CTI have evidence of actual consumer confusion.

15       93.    Counter-Defendant/Third Party Defendants' use of "blk. water"

16  or "blk.BLACKWATER" is also likely to cause confusion as they have nearly

17  the same look and sound as BLACKWATER.

18       94.    Counter-Defendant/Third-Party Defendants' unauthorized use of

19  the BLACKWATER mark (including the highly similar blk.water or

20  blk.BLACKWATER marks) in connection with the offering of its goods

21  deprives CTI and Counter-Claimants of the ability to control the consumer

22  perception of the quality of the goods and services marketed under the

23  BLACKWATER mark, and places their valuable reputation and goodwill in

24  the hands of Counter-Defendant/Third-Party Defendants, over which Counter-

25  Claimants have no control.

26            **SEVENTH CAUSE OF ACTION**

27      **(False Designation of Origin under 15 U.S.C. §1125)**

28      **Against All Counter-Defendants/Third Party Defendants**

95.     Counter-Claimants incorporate by reference and re-allege allegations 1-94 above, as if set forth fully herein.

96.     Counter-Defendant/Third-Party Defendants unauthorized use of the BLACKWATER mark falsely suggests that their goods are connected with, sponsored by, affiliated with, or related to Counter-Claimants and CTI, and constitutes a false designation of origin in violation of 15 U.S.C. §1125(a).

## EIGHTH CAUSE OF ACTION

### (Common Law Trademark Infringement)

### Against All Counter-Defendants/Third-Party Defendants

97.     Counter-Claimants incorporate by reference and re-allege allegations 1-96 above, as if set for fully herein.

98.     Counter-Defendant/Third-Party Defendants' acts described above constitute common law trademark infringement.

## NINTH CAUSE OF ACTION

### (Unfair Competition under Cal. Bus. & Prof. Code §17200)

### Against All Counter-Defendants/Third-Party Defendants

99.     Counter-Claimants incorporate by reference and re-allege allegations 1-98 above, as if set forth fully herein.

100.    Counter-Defendant/Third-Party Defendants' acts described above constitute unfair competition in violation of California Business and Professional Code §17200 *et seq.*, as they are unlawful, unfair, and fraudulent business practices, and are likely to deceive the public.

## TENTH CAUSE OF ACTION

### (Common Law Passing Off and Unfair Competition)

### Against All Counter-Defendants/Third-Party Defendants

101.    Counter-Claimants incorporate by reference and re-allege allegations 1-100 above, as if set forth fully herein.

102. Counter/Defendant-Third-Party Defendants' unauthorized use of the BLACKWATER mark constitutes passing off and unfair competition of Blackwater's brand in violation of common law.

## ELEVENTH CAUSE OF ACTION

### (Cancellation of U.S. Reg. No. 3,986,573 for Fraud on the USPTO and as Void *Ab Initio*)

### Against Jacqueline Wilkie and BLK

103. Counter-Claimants incorporate by reference and re-allege allegations 1-102 above, as if set forth fully herein.

104. Jacqueline Wilkie filed application Ser. No. 77/910,623 ("the '623 Application") for BLACKWATER in connection with "drinking water" with the USPTO *in her own name* on January 13, 2011. That application eventually matured into registration 3,986,573 ("the'573 Registration").

105. At the time Ms. Wilkie filed the application, she signed a sworn declaration, under penalty of perjury that stated:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, **declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered,** or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; **to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce,** either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that **all statements made of his/her own knowledge are true**; and that all statements made on information and belief are believed to be true.

106. At the time Ms. Wilkie signed this sworn declaration, she knew that she did not have the right to apply for the trademark in her own name. She

knew that she should have applied in the name of CTI.  She knew that she did not have the right to use BLACKWATER in commerce in her own name and that the rights belonged to Counter-Claimants and CTI, who had created the name and logo.

107.   In April 2010, when Ms. Wilkie transferred the '623 Application to BLK and filed a Statement of Use, Ms. Wilkie and BLK claimed, under penalty of perjury, to have been using the mark in commerce as of August 1, 2010.  Ms. Wilkie was still a Vice President of Blackwater on August 1, 2010.  Moreover, BLK did not yet exist at that time.

108.   In addition, in concert, Ms. Wilkie and BLK filed a specimen of use, claiming to the USPTO that they had used the product, as shown, as of August 1, 2010.  Notably, Ms. Wilkie and BLK's specimen is a near replica of that created and used by Counter-Claimants:




*Counter-Claimant's BLACKWATER product*          *Specimen Submitted by J. Wilkie and BLK*

109.   Ms. Wilkie and BLK did not sell any products using the mark as shown in the specimen and upon information and belief, the specimen was a forgery created by Jacqueline Wilkie.

110.   Ms. Wilkie's and BLK's sworn statements of exclusive right to BLACKWATER, their claimed use, and their specimen of use are all misstatements of fact made to the USPTO.  The misstatements are material because the USPTO used them as the basis for granting the '573 Registration for the BLACKWATER mark.

111.   Ms. Wilkie and BLK's misstatements were made with the intent to deceive the USPTO into granting a registration to Ms. Wilkie and BLK that they were not entitled to.  As such, Ms. Wilkie and BLK committed fraud on the USPTO.

112.   Separately, the '573 Registration is also void *ab initio* as Ms. Wilkie made false statements regarding the date of first use, filed a false specimen of use, and had no right to apply to register the BLACKWATER mark on behalf of herself.

## TWELFTH CAUSE OF ACTION

### (Damages Caused by Fraud on the USPTO, 15 U.S.C. § 1120)

### Against Jacqueline Wilkie and BLK

113.   Counter-Claimants incorporate by reference and re-allege allegations 1-112 above, as if set forth fully herein.

114.   As detailed above, Jacqueline Wilkie and BLK obtained the '573 Registration through fraud on the USPTO by making material misrepresentations of fact with the intent to deceive the USPTO and upon which the USPTO relied in granting the '573 Registration.

115.   Counter-Claimants and CTI have been damaged through that fraudulent registration.  Among other damage, Counter-Claimants have lost sales and business opportunities because of Ms. Wilkie's and BLK's fraudulent registration and misappropriation of the BLACKWATER mark.

116.   Counter-Claimants have evidence of consumer confusion in the marketplace.  Counter-Claimants have likewise been damaged through such confusion.

## THIRTEENTH CAUSE OF ACTION

### (Tortious Interference with Contracts)

### Against All Counter-Defendants/Third-Party Defendants

117.   Counter-Claimants incorporate by reference and re-allege allegations 1-116 above, as if set forth fully herein.

118.   During their time as owners and Vice Presidents of Blackwater, Jacqueline Wilkie and Louise Wilkie learned of agreements that the company had for sales of BLACKWATER products.  These included an arrangement with NSG to promote and broker distribution of BLACKWATER, an agreement with NeHE, the largest distributor of specialty foods in the United States, and other distribution agreements.

119.   On or before they left the company, the Wilkie Sisters combined with the other Counter-Defendants/Third-Party Defendants and interfered with these contracts by usurping the arrangements for themselves.  The Counter-Defendants/Third-Party Defendants held themselves out as the owners of BLACKWATER and interfered with these agreements, and caused damage to the Counter-Claimants.

120.   The tortious interference has damaged, and continues to damage, Counter-Claimants.  The Counter-Defendants/Third-Party Defendants sell a competing product to prospective purchasers of BLACKWATER.  Counter-Claimants have lost, and continue to lose, sales and business opportunities as a result of the tortious interference.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counter-Claimant/Third-Party Claimants prays for the following:

A.    Entry of an order and judgment requiring that All Counter-Claim Defendants and Third Party Defendants ("Counter-Claim/Third Party Defendants"), including their agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from (a) using in any manner the BLACKWATER trade name and trademark, or any name or mark that is confusingly similar to or a colorable imitation of this mark, including but not limited to blk.water or BLK water; (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, or prospective customers of Counter-Claimants' products or services, as to the source of the products or services offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between Counter-Claimants and Third Party Defendants; and (c) from selling or advertising for sale any mass-retail marketed water infused with fulvic acid.

B.    A judgment ordering Counter-Claim/Third Party Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Counter-Claimants within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which they have complied with the injunction, ceased all sales of goods and services under the BLACKWATER trade name and mark;

C.    A judgment ordering Counter-Claim/Third Party Defendants, pursuant to 15 U.S.C. § 1118, to deliver up for destruction, or to show proof of said destruction or sufficient modification to eliminate the infringing matter, all articles, packages, wrappers, products, displays, labels, signs, vehicle

displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles or other matter in the possession, custody, or under the control of Counter-Claim/Third Party Defendants or their agents bearing the trademark BLACKWATER in any manner, or any mark that is confusingly similar to or a colorable imitation of this mark, including without limitation blk.water or BLK.water;

D.    A judgment ordering Counter-Claim/Third Party Defendants to take all steps necessary to cancel or transfer to Counter-Claimants, in Counter-Claimants' sole discretion, any domain names that include the BLACKWATER trademark that are in Counter-Claim/Third Party Defendants' possession or control, and to remove all references to BLACKWATER from all of their other websites;

E.    A Judgment and Order sustaining Counterclaim cause of action cause of action three, ordering re-assignment of the '573 Registration to Blackwater, or in the alternative, cause of action 11, ordering cancellation of the '573 Registration for fraud on the PTO or as void *ab initio*;

F.    For the recovery of all damages sustained by Counter-Claimants due to the wrongs of the Counter-Claim/Third Party Defendants;

G.    For disgorgement of all gains, profits, and advantages derived by Counter-Claim/Third Party Defendants from their acts of trademark infringement, unfair competition, and other violations of law;

H.    A Declaration that Counter-Claim/Third Party Defendants' revenues be held in a constructive trust for the benefit of Counter-Claimants;

I.    For exemplary and treble damages, as provided by the law;

J.    For punitive damages;

K.    For all costs and expenses;

L.    For prejudgment interest at the maximum legal rate; and

1    M.    For such other and further relief as the Court may deem proper.

2

3    Dated:  December 15, 2011.

4                                    PILLSBURY WINTHROP SHAW
                                     PITTMAN LLP
5                                    BOBBY GHAJAR
                                     MARK LITVACK
6                                    MARCUS PETERSON
                                     725 South Figueroa Street, Suite 2800
7                                    Los Angeles, CA  90017-5406

8
                                     By _____
9
                                     Attorneys for Plaintiff/Counter-
10                                   Claimants/Third Party Plaintiffs
                                     BLACKWATER INNOVATIONS CORP.
11                                   IVAN SOLOMON
                                     GORDON JUNG.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

Counter-Claimants hereby demand trial by jury of all issues so triable.

3

4    Respectfully submitted,

5    Dated: December 15, 2011

            PILLSBURY WINTHROP SHAW
6           PITTMAN LLP
            BOBBY GHAJAR
7           MARK LITVACK
            MARCUS PETERSON
8           725 South Figueroa Street, Suite 2800
            Los Angeles, CA  90017-5406
9           By

10   _____

11          Attorneys for Plaintiff/Counter-
            Claimants/Third Party Plaintiffs
12          BLACKWATER INNOVATIONS CORP.
            IVAN SOLOMON
13          GORDON JUNG.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28